■ In the Matter of the Claim of JEFFREY T. PRESCOTT, Respondent, v TOWN OF LAKE LUZERNE, Appellant. WORKERS' COMPENSATION BOARD, Respondent. [912 NYS2d 725]—

Stein, J. Appeals (1) from a decision and amended decision of the Workers' Compensation Board, filed December 30, 2008 and July 14, 2009, which, among other things, precluded the introduction of an independent medical examination report as untimely, (2) from a decision of said Board, filed August 13, 2009, which, among other things, ruled that claimant had sustained a work-related injury, (3) from a decision of said Board, filed December 3, 2009, which denied the employer's request for full Board review, and (4) from a decision of said Board, filed February 22, 2010, which, among other things, ruled that claimant's subsequent surgeries were causally related to the compensable accident.

On February 11, 2008, claimant fell as he was climbing down off a dump truck while in the course of his employment with the Town of Lake Luzerne (hereinafter the employer). Claimant landed on his right buttock and, experiencing significant pain and fearing that he had damaged his hip replacement,[1] was

1. Claimant had two prior hip replacements—one in 1991 and one in 2006—neither of which was work related.

taken by ambulance to the emergency room. Although the initial diagnosis at the emergency room was hip pain, imaging studies showed no obvious loosening of the hardware related to the hip prosthesis or fracture in that area. However, due to increasing pain, surgery was performed on May 8, 2008. During such surgery, an extensive amount of heterotopic bone surrounding claimant's hip was discovered and removed. William O'Connor, the surgeon, opined that claimant suffered from heterotopic ossification in his hip—a condition in which muscle turns to bone—which had existed, but was relatively untroubling, before the February 2008 fall. O'Connor further opined that the fall fractured the heterotopic ossification, resulting in the pain that claimant was experiencing. Several months later, claimant developed an infection attributed to the May 2008 surgery, which required a two-stage revision of his total hip replacement in November 2008 and February 2009.

Following a hearing, a Workers' Compensation Law Judge (hereinafter WCLJ) found the May 2008 surgery to be causally related to claimant's fall at work. The WCLJ precluded the employer from introducing into evidence an independent medical exam (hereinafter IME) because it was not completed in a timely manner. The WCLJ also denied the employer's request to cross-examine certain treating physicians on the basis that their reports were self-evident and did not address the causal relationship between claimant's fall and the injury. On appeal, the Workers' Compensation Board, in an amended decision, affirmed the decision of the WCLJ to preclude the IME as untimely and to prohibit the cross-examination of the physicians. Thereafter, the Board affirmed two subsequent determinations of the WCLJ finding that claimant had sustained a work-related injury to his hip and that the ossification resection was causally related and properly authorized. The Board further determined, among other things, that claimant had not violated Workers' Compensation Law § 114-a and that medical evidence supported the awards made to claimant through November 2008. The employer's application for full Board review was subsequently denied. Finally, the Board affirmed the WCLJ's determination that the two-stage hip replacement revision surgeries were a consequence of the May 2008 surgery and, accordingly, were causally related to the compensable injury. The employer now appeals.

The employer's first contention is that the IME was improperly precluded. We disagree. At a prehearing conference in April 2008, the WCLJ instructed the employer to submit an IME at or before the next hearing. Thereafter, in a written decision, the

WCLJ noted that the Chair had transferred the case to the expedited calendar.[2] The employer then arranged for an IME to take place on June 11, 2008. On April 25, 2008, the WCLJ notified the parties that the next hearing was tentatively scheduled for May 30, 2008. Thereafter, by notice filed on April 30, 2008, that date was confirmed. Despite having been notified that the date of the hearing was before the date on which the IME was scheduled to occur, there is no evidence in this record that the employer took any action either to reschedule the IME for an earlier date or to adjourn the hearing. Under these circumstances, we cannot say that preclusion of the IME was improper. We are also unpersuaded by the employer's argument that it was denied due process when it was precluded from questioning certain physicians regarding the causal relationship between claimant's postaccident symptoms and the preexisting condition of his hip, inasmuch as the doctors in question had not treated claimant for his causally related injury, and no reports from them were on file at the time the record with regard to causation was closed (*see generally Matter of McKenzie v UJA-FED*, 47 AD3d 1181, 1181 [2008]).

The Board's determinations that claimant's injury was caused by his fall at work and that the initial surgery was causally related to the fall are supported by substantial evidence in the record. Although the initial accident report and compensation claim both indicate that claimant fell on his buttocks, the emergency room physician and O'Connor both testified that claimant informed them that he fell on his right hip, and claimant testified that he fell on "[his] buttocks . . . right cheek." Moreover, O'Connor—who treated claimant before and after the accident and performed the first surgery following the accident—opined that the trauma claimant experienced in the fall fractured the heterotopic ossification in his hip, causing the sudden onset of pain and other symptoms that claimant experienced. Although there was evidence to the contrary, giving proper deference to the Board's credibility determinations in resolving conflicting medical opinions and evidence, we discern no basis upon which to disturb its determinations as to causation (*see Matter of Kot v Beth Ameth Home Attendant Serv.*, 70 AD3d 1114, 1115 [2010];

---

2. The issue of the propriety of the transfer to the expedited calendar is not preserved for our review as the employer did not raise this specific issue to the Board following the WCLJ's substantive decisions (*see Matter of Middleton v Coxsackie Correctional Facility*, 38 NY2d 130, 132-133 [1975]; *Matter of Finchum v Colaiacomo*, 55 AD3d 1084, 1085 [2008]). Nor has any evidence been offered to indicate that the Chair abused his discretion in transferring the case to the expedited calendar (*see* Workers' Compensation Law § 25 [3] [d]; 12 NYCRR 300.34 [b]).

*Matter of Hassan v Ford Motor Co.*, 69 AD3d 1024, 1026 [2010]; *Matter of Ciafone v Consolidated Edison of N.Y.*, 54 AD3d 1135, 1135-1136 [2008]).

However, we find no support in the record for the Board's determination that claimant's initial surgery was properly authorized. A claim for a surgical procedure costing in excess of $1,000 is not valid and enforceable against the employer unless the procedure is authorized by the Board or the employer (*see* Workers' Compensation Law § 13-a [5]). If the employer fails to issue a written denial based upon a conflicting medical opinion within 30 days of a request for such authorization, the procedure is deemed to be authorized and the employer or the workers' compensation carrier is liable for payment therefor (*see* Workers' Compensation Law § 13-a [5]; 12 NYCRR 325-1.4 [a]). Here, the employer contends that it is not obligated to pay the cost of the initial surgery, because no request for authorization for such surgery was made. Notwithstanding claimant's testimony that he was informed by O'Connor and/or his staff and by "Workmens comp" that authorization for the initial surgery had been denied, our review of the record reveals no C-4 report by O'Connor (as referenced in the Board's determination) or any other written evidence that a request for such authorization was actually made. Nor did O'Connor testify that he made a request therefor. Thus, the Board's determination is not supported by substantial evidence and must be reversed (*see Matter of Lopez v Superflex, Ltd.*, 31 AD3d 914, 914 [2006]).

On the other hand, we do find, contrary to the employer's argument, that the awards to claimant made after November 11, 2008 were supported by substantial evidence. O'Connor testified that the infection which required the two-stage revision of claimant's hip replacement was causally related to the May 2008 surgery and, by extension, to the work-related accident. Although the employer's physician, Dominic Belmonte, concluded that the infection was not causally related to the fall, this conclusion was apparently premised on his opinion that the initial condition and May 2008 surgery were not causally related to that accident. Even Belmonte opined that, if the initial surgery was determined to be compensable, the two-stage revision was as well. Accordingly, notwithstanding the existence of some contrary medical evidence, we perceive no basis to disturb the Board's determination that compensation was justified (*see Matter of Williams v Colgate Univ.*, 54 AD3d 1121, 1123 [2008]).

The employer's remaining contentions have been reviewed and found to be unavailing.

Cardona, P.J., Mercure, Lahtinen and Garry, JJ., concur.

Ordered that the decision filed August 13, 2009 is modified, without costs, by reversing so much thereof as determined that the May 2008 surgery was authorized; matter remitted to the Workers' Compensation Board for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed. Ordered that the decisions and amended decision filed December 30, 2008, July 14, 2009, December 3, 2009 and February 22, 2010 are affirmed, without costs.